# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARL LYNN BRAZELL,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>ON HABEAS CORPUS,<br><br>　　　　　Respondent.<br>_____/ | 1:10-cv-01075-SMS (HC)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY<br><br>[Doc. 6] |

　　　　Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.  Local Rule 305(b).

## BACKGROUND

　　　　Following a jury trial in the Tulare County Superior Court, Petitioner was convicted of kidnapping for ransom (Cal. Penal Code[1] § 209(a)), two counts of assault with a deadly weapon (§ 245(a)(1)), attempted robbery (§§ 664/211), and commercial burglary (§ 459).  The jury further found true that one of the victims was a developmentally delayed adult (§ 667.9(a)), and that Petitioner personally used a deadly and dangerous weapon (§ 12022(b)(1)).  On March 5, 2008, the trial court sentenced Petitioner to state prison for the term of 13 years to life.

　　　　The California Court of Appeal affirmed the judgment, and Petitioner did not seek review in the California Supreme Court.

---

[1] All further statutory references are to the California Penal Code unless otherwise indicated.

1

1    Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. The
2 California Supreme Court denied the petition, citing <u>In re Waltreus</u>, 62 Cal.2d 218 (1965), <u>In re</u>
3 <u>Swain</u>, 34 Cal.2d 300, 304 (1949), and <u>People v. Duvall</u>, 9 Cal.4th 464, 474 (1995).
4    Petitioner filed the instant petition for writ of habeas corpus on June 15, 2010, and a first
5 amended petition on August 11, 2010.  Respondent filed an answer to the petition on October 1,
6 2010.  Petitioner did not file a traverse.

## STATEMENT OF FACTS

8    Richard St. Louis, Jared O., and other customers were in a liquor store in Tulare on July
9 19, 2007.  St. Louis and Jared O. were purchasing sodas.  Petitioner ran into the store with a
10 plastic grocery bag over his head.  Petitioner grabbed Jared O. around the neck, proceeded to
11 pound the counter, and told the clerk twice to: "Give me the fucking money."  When Petitioner
12 left, St. Louis could see that he was carrying a knife with a blade five or six inches long and St.
13 Louis could see Petitioner's face from the bridge of his nose down.  St. Louis was later able to
14 identify Petitioner from a police photograph.
15    The clerk of the store, Roxanne Ali, did not begin to take money out of the cash register.
16 St. Louis testified that Ali appeared to be shocked.  Ali never gave Petitioner money.  As
17 Petitioner was leaving the store, he gave Jared O. a slight push causing Jared O. to fall to the
18 floor.  Jared O. has a handicap.  Jared O.'s father testified that his son suffers from Down's
19 Syndrome.
20    Marie Hernandez and Darci Massey were in the store taking a break from work.  They
21 saw Petitioner enter the store with a plastic bag over his head, grab Jared O., and demanded
22 money from Ali.  Hernandez and Massey saw a knife in Petitioner's hand.  Both women heard
23 Petitioner demand money or he would cut Jared O.
24    Ali testified that a man later identified as Petitioner came into her store with a bag on his
25 head.  The man grabbed Jared O. by the neck.  Although the man demanded money, Ali refused
26 to give it to him.  Ali told the man there was a cop standing outside the store.  The man pushed
27 Jared O. to the floor and left.  Although the store is equipped with a videotape device, it was not
28 working at that time.

     Devon Fowler, who was in the store during the incident, testified that Petitioner grabbed Jared O. by the neck and put a knife to Jared O's throat. The man demanded money. Ali refused to give him any. Petitioner started smashing stuff off the counter. The knife Petitioner was carrying made a small little cut on Jared O's neck. Petitioner asked Ali if she wanted Jared O. to die. Ali said she had no money. Petitioner pushed Jared O. away and fled.

     David Frausto was walking home by the liquor store next to the post office when he saw Petitioner. Frausto had never seen Petitioner before. Petitioner looked at Frausto strangely and appeared to be angry. As Frausto walked past Petitioner, who was standing next to a telephone booth, Frausto thought Petitioner hit him. Petitioner had stabbed Frausto's right hip. A blood test of Petitioner showed that his blood alcohol level after his arrest was .15 percent.

## DISCUSSION

### I. Jurisdiction

     Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

     On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

///

II.     Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams (Terry) v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id., quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (*per curiam*). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

Courts further review the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991). However, where the state court decided an issue on the merits but provided no reasoned decision, courts conduct "an independent review of the record . . . to

determine whether the state court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

III.     Ineffective Assistance of Counsel

Petitioner contends that his trial counsel was ineffective for not presenting legal authority to support the argument that an express verbal threat is an element of the kidnap for ransom offense under state law.

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688.  The court must also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).  More precisely, petitioner must show that (1) his attorney's performance

was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different.

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984). Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must necessarily fail.

Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

CALCRIM No. 1201, which defines kidnapping for ransom as given to the jury in this case, provides in pertinent part:

> To prove that the defendant is guilty of [kidnapping for ransom], the People must prove that, one, the defendant seized, held, detained, or confined someone; two, when the defendant acted, he intended to hold or detain the person, and; three, the [defendant] did so for ransom or for reward or to commit extortion or to get money or something of value. It is not necessary that the person be moved for any distance.

(Lodged Doc. No. 7 at 148; Lodged Doc. No. 5 at 190.)

Petitioner has failed to cite any authority for the proposition that California law requires a defendant to verbally threaten the victim in order to be guilty of kidnapping for ransom. In fact, the elements as defined in CALCRIM No. 1201 do not support such finding. Therefore, counsel was not incompetent nor was Petitioner prejudiced. Accordingly, there is no basis to find that the state court's resolution of this claim was not contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254.

## ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1. The instant petition for writ of habeas corpus is DENIED;

2. The Clerk of Court shall enter judgment in favor of Respondent; and

///

3. The court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," i.e., when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong"; <u>Hoffman v. Arave</u>, 455 F.3d 926, 943 (9th Cir. 2006) (same). In the present case, the Court finds that reasonable jurists would not find it debatable that the state courts' decision denying Petitioner's petition for writ of habeas corpus were not "objectively unreasonable."

IT IS SO ORDERED.

**Dated:     November 24, 2010**                      /s/ Sandra M. Snyder
UNITED STATES MAGISTRATE JUDGE